UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LAURI BANKSTON**                          **CIVIL ACTION**

**VERSUS**                                  **NO. 07-5507**

**UNUM LIFE INSURANCE COMPANY**             **SECTION: "B"(3)**


ORDER AND REASONS

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. No. 12) and Defendant's Cross Motion for Partial Summary Judgment (Rec. Doc. No. 18) on whether ERISA governs.

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED** and Defendant's Motion for Partial Summary Judgment is **GRANTED. IT IS FURTHER ORDERED** that Plaintiff's state law claims are **DISMISSED** because they are preempted by ERISA.

BACKGROUND

On September 15, 2005, an application for group insurance with Unum was executed by Dez O'Rourke on behalf of Court Reporters of Louisiana, LLC ("CRLA"), requesting coverage for group short and long term disability benefits. O'Rourke had contacted an agent with the Omni Group on

1

behalf of CRLA for the "purposes of obtaining long term disability insurance" for CRLA partners, court reporters, and non court-reporter employees. Coverage was to be provided to two classes of employees – Class I being comprised of court reporters earning "salary, commissions" and Class II consisting of the manager and secretary who earn "salary." Plaintiff submits that the disability policy created two separate and distinct plans – one for employees governed by ERISA and the second for independent contractors, governed by state law. Plaintiff moved for a partial summary judgment finding that ERISA does not preempt here state law claims under the UNUM policy. Defendant filed a cross motion for partial summary judgment to determine the existence of an ERISA plan.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides in relevant part, that summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The United States Supreme Court has held that this language "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *see also*, *Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 549 (5th Cir. 1989); *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to resolve factual disputes by weighing conflicting evidence,... since it is the province of the jury to assess the probative value of the evidence." *Kenneth-Murray Corp. v. Bone.*, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir. 1962).

## **DISCUSSION**

An ERISA plan is any employee welfare plan that is "established or maintained by the employer" engaged in commerce, which "provides for its participants and beneficiaries, through the purchase of insurance or otherwise, (a) medical, surgical or hospital care benefits in the event of ...disability, death,..."[1] ERISA was enacted in 1974 and bars state law causes of action when the state law claims address areas of federal concern, such as the right to receive benefits under the terms of and ERISA

---

[1] *Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449 (5th Cir. 1991); 29 U.S.C. §§ 1002, 1003.

4

plan; and the claims directly affect the relationship between the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.[2]

**A. ERISA Preempts State Law Causes of Action**

ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan ..." 29 U.S.C. 1144(a). In other words, ERISA preempts state law claims of action, such as those contained in the Plaintiff's complaint. The first element of preemption—whether state law claims address areas of exclusive federal concern, such as the right to receive benefits under an ERISA plan, is met. Clearly, Bankston claims a right to receive benefits under the UNUM long-term disability insurance policy. However, Bankston argues that Defendant's policy is not an ERISA employee benefit plan. Plaintiff submits that the disability policy created two separate and distinct plans – one for employees governed by ERISA and the second for independent contractors, governed by state law.

---

[2] 29 U.S.C. § 1144(a). *See Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172, 176 (5th Cir. 1994); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 245 (5th Cir. 1990).

In order to meet the first element of preemption, Plaintiff must claim a right to receive benefits under an ERISA plan. Thus, the issue is whether Bankston's disability insurance policy with UNUM is governed by ERISA, invoking federal preemption.

**B. Existence of an Employee Welfare Plan**

Because UNUM is the party asserting ERISA preemption, it has the burden to establish the existence of a plan which would invoke ERISA's exclusive remedy provisions. *See Murphy v. Inexso Oil Co.,* 611 F.2d 570, 573 (5th Cir. 1980). In order to determine if an employee welfare benefit plan exists, the "court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, sources of financing, and procedures for receiving benefits." *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 978-79; *Meredith v. Time Ins. Co.,* 980 F.2d 352, 355 (5th Cir. 1993).

In the instant case, the plan at issue provided long and short term disability benefits to eligible employees of the policyholder, CRLA.[3] However she contends that as a court reporter, she was an independent contractor and not an employee of CRLA, and that she was covered under a

---
[3] Rec. Doc. 12, p.1.

separate non-ERISA plan. The plan at issue provided long and short term disability benefits to eligible employees of the policyholder, CRLA. Although plaintiff would like this Court to find that the disability policy created two separate and distinct plans, with one being for non-employees, there was only one plan. The terms of the single policy which provides coverage for separate classes of beneficiaries are clear and unambiguous and Bankston's status as an employee or independent contractor does not present a genuine issue of material fact precluding summary judgment.

The facts are undisputed that in response to a request on the form to provide information on all of the employees to be covered, ten individuals were identified as court reporters and the other two employees were stated to be the manager and secretary. Each of the court reporters was identified as being members of Class I. Lauri Bankston's application indicated that she was indeed a certified court reporter. Moreover, Bankston submitted a claim for disability benefits in 2006 on which she stated that her

employer was Court Reporters of Louisiana and that she was not currently employed by another employer.[4]

Bankston misstates that the 2 classes of insureds under the single plan consisted of (I) non-employee associated reporters and (II) employees and partners.[5] To the contrary, the enrollment forms clearly demonstrate that coverage under the policy was provided to Class I, which includes all court reporters whether a partner or not, and Class II which consists of two non-court reporter employees.[6] Numerous provisions in the policy make it clear that non-partner court reporters are considered employees under the plan. Moreover, it is undisputed that the plan covers partners and other non-partner employees as participants under the plan.

It is overwhelmingly evident that the Unum disability plan for CRLA was an employee benefit plan. (1) A reasonable person could easily conclude that the intended benefits were group ling and short term disability insurance, namely 60% of weekly earnings[7]; (2) that the beneficiaries were CRLA's partners, court reporters, and non-court reporter employees; (3) that the source of

---

[4] Ex. D-1 (Undisputed Material Facts).
[5] Rec. Doc. 12, p.2.
[6] Ex. C-1, UASP pgs. 138-144.
[7] Ex. A-1, pgs. 00606, 00604

financing was through premiums paid by the partners for their own coverage and paid by CRLA to all other employees, with the costs of the employer paid coverage being included in the individual's taxable income; (4) and that the procedure for receiving benefits would be by submitting claims through forms obtained from CRLA or Unum, or by sending written proof of claim without a form.

**C. Independent Contractors are covered under ERISA**

Even if this Court were to classify Bankston as an independent contractor, her claim would still be governed by ERISA. 29 U.S.C. §1132 provides that a civil action may be brought under ERISA by a plan "participant, "beneficiary," "fiduciary," or by the Secretary of Labor. Under the jurisprudence of the Fifth Circuit, even if she is not an employee participant, Bankston is still designated by the terms of the plan as a covered beneficiary.

This case is similar to *Hollis v. Provident Life & Accident Ins. Co.,* 259 F.3d 410 (5th Cir. 2001), wherein the plaintiff, an independent sales representative brought state law causes of action against her disability insurance company. Plaintiff argued that as an independent contractor, he could not be an ERISA beneficiary. The Fifth

Circuit held that the employer-paid policy was part of an employee benefit plan for purposes of the ERISA preemption provision and the plaintiff's status as an independent contractor did not preclude his being a "beneficiary."

In rejecting Hollis' assertion that an independent contractor could not be an ERISA beneficiary, the Court first looked to the provisions of the ERISA statute. ERISA defined a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." It is undisputed that Bankston is a person designated by the terms of the plan who could be entitles to benefits thereunder. Otherwise, she would have no standing to bring claim for disability benefits under the Unum policy. Thus, even if she was an independent contractor of CRLA rather than an employee, she is an ERISA beneficiary.

Plaintiff contends that independent contractors are not generally considered ERISA employees. In arguing that a contrary conclusion should be reached, Bankston relies on *Hillstrom v. Keneflick*, 484 F.3d 519 (8th Cir. 2007), a case involving a legal malpractice claim against an attornet for failing to file suit on a disability claim and a request for declaratory judgment against the disability insurer

that the plaintiff's suit was not time barred. The plan at issue provided coverage to "employees" who were not listed by name in the policy, which was cancelled when the company went out of business.[8] While the Court found that Hillstrom was not an "employee," there was no assertion, and the Court did not address whether he was beneficiary designated by the terms of the plan. Thus, Hillstrom has no application to the facts of this case.

A similar single multi-class disability policy and the Fifth Circuit's treatment of it provide useful guidance to the facts presented in the case at the bar. In *House v. American United Life Ins. Co.*, 499 F.3d 443 (5th Cir. 2007), the policy provided for three classes: (1) partners; (2) non-partner attorneys; and (3) non-attorney employees. The classes were distinguished based on: (1) partners contributed 100% of their premiums and (2) the definitions of disability for the partner and non-partner attorneys differed slightly form that applicable to other non-attorney employees. House, a partner, asserted state law claims of action, contending (similarly to Bankston) that his coverage was provided under a separate non-ERISA plan for which he paid the premiums. The Court in *House* found

---

[8] 484 F.3d at 521.

that the pan was governed by ERISA because the multi-class single policy did not create separate and distinct plans. The Court opined that "the policy contemplates and established a single plan, with the only distinctions between classes being the method of determining pre-disability earnings." *Id.* at 450-451.

Returning to the instant case, it is undisputed that the single insurance policy provides coverage to CRLA owner, non-court reporter employees and court reporters that are not owners, whether they are employees or independent contractors. As Bankston herself point out, the distinction made has to do with how weekly earnings will be computed.[9] Bankston is either covered as an employee participant or as a beneficiary designated by the terms of the plan. To hold that the same policy is governed by state law as applied to Bankston and other non-court reporters and by federal law as to partners and non-court reporter employees would be contrary to ERISA's purpose of achieving uniformity in the law governing employee benefits.

**D. Safe Harbor Provisions**

---

[9] At page 15 of the policy: "Partners- 'weekly earnings' means your average weekly income as an insured partner as is figured… Court Reporters- 'weekly earnings' means your gross weekly income from your employer… does not include… any other extra compensation income received from other sources other than your employer…."

The Department of Labor has established a four-pronged ERISA "safe harbor" test.[10] In order to come within the safe harbor protections, and thus be exempt from ERISA, a plan must satisfy all four criteria. The Fifth Circuit has held that 'an insurance policy is not governed by ERISA if (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4)the employer received no profit from the plan." *McNeil v. Times Ins. Co.*, 205 F.3d 179, 190.

Bankston paid 100% of the premium for her coverage under the policy. It is also clear that she participated in the plan out of her own volition. Thus, the first two prongs of the test are easily satisfied. There are no facts that suggest CRLA received a profit form the plan. Thus, the fourth prong is also satisfied. However, in order to be exempt from ERISA, the employer's role must be limited to collecting premiums and remitting them to the insurer.

The DOL's description suggests that the safe harbor provision may be invoke only when the employer's role is reduce to ministerial functions as opposed to that of a fiduciary. This Court cannot find that CRLA acted without

---

[10] 29 C.F.R. §§ 2510.3-1(j).

exercise of personal judgment or discretion in administering the plan since CRLA's role involved more than merely collecting premiums and remitting them to Unum. The policy designates CRLA as the Plan administrator and the named fiduciary of the plan, with authority to delegate its duties. CRLA is also the designated agent for service of legal process on the plan. As plan fiduciary, CRLA was obligated to operate the plan prudently and in the interest of plan participants and beneficiaries. Thus, this plan cannot fall under the protection of the safe harbor provision.

## CONCLUSION

Following the Fifth Circuit's decision in *Hollis*,[11] and for the aforementioned reasons, the CRLA disability plan is an employee welfare benefit plan within the meaning of ERISA and Bankston is covered under the plan as a beneficiary. As a result, Bankston's state law claims are preempted and must be dismissed.

New Orleans, Louisiana this 8th day of January, 2009.

UNITED STATES DISTRICT JUDGE

---

[11] 259 F. 3d 410 (5th Cir. 2001)